IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In Re: ) | |
| ) | |
| **Timothy S. Croft,** ) | 12-43093 |
| **Barbetta Croft,** ) | |
| **Debtors** ) | Chapter 13 |

### DEBTORS' STIPULATIONS AND BENCH BRIEF

Comes now Debtors, **Timothy and Barbetta Croft** and hereby agree to certain stipulated facts and further move for the court to hear arguments during the hearing of this matter dated January 28, 2013 at 9:00 am. The hearing currently scheduled is regarding the Amended Proof of Claim filed by creditor, **1st MidAmerica Credit Union ("MidAmerica")** in the amount of **$11,050.68**, on November 28, 2012. The court claim number is 5-3.

1. In order to expedite the hearing, the Debtors are willing to stipulate that the documents attached to claim 5-3 are true and accurate copies of the originals of those documents.

2. Counsel for Debtor conferred with Crystal Williams, counsel for Claimant 1st Mid-America Credit Union, on January 23, 2012 regarding the Debtors objection to claim 5-3. Counsel for both parties agreed that the claim objection is ripe for hearing, and both parties are ready to make arguments, should it please the court, during the hearing Scheduled on January 28, 2013 at 9 am.

3. Neither party intends to call any live witnesses, and the only documents to be considered by the court are those attached to claim 5-3, namely,

    a. Exhibit A, (2 pages) Titled Loan Agreement and Consumer Credit Disclosure Statement ("Agreement") dated January 8, 2010;
    b. Exhibit B, (2 pages) Missouri Department of Revenue Record Lookup and Joint Credit Card Application of Debtors, executed June 9, 2001.
    c. Exhibit C, (1 page) Olin Employees Credit Union Credit Card Agreement Terms and Conditions.

4. MidAmerica contends that language in paragraph 4 of Exhibit A provides the basis for cross-collateralization of Debtors' 2000 Chevrolet Silverado for the Visa line of credit issued by Olin Employees Credit Union nearly ten years before the loan for the vehicle was made.

5. The relevant portion of Paragraph 4 of Exhibit A reads: "Collateral (other than household goods or any dwelling) given as security under this agreement or for any other loan You may have with Us will secure all amounts You owe Us now and in the future **if that status is reflected in the 'Truth-in-Lending Disclosure' in any particular Agreement evidencing such debt"** (emphasis added).

6. The Credit Union has not produced a TILA Disclosure related to the 2001 Credit Card Agreement (Exhibit C).

7. Illinois and relevant federal law control the Loan Agreement executed for the Chevy Silverado. Ex. A, ¶ 10.

8. In Illinois, cross-collateralization clauses (also known as "dragnet" clauses) are not favored and are only enforceable "if they are clear and unambiguous." *Peoples Nationals Bank, N.A. v Jones*, 482 B.R. 257, 263 (S.D. Ill. 2012).

9. "A security interest attaches only if a signed security agreement **properly describes collateral.**" *In re Equipment Acquisition Resources, Inc.*, 692 F.3d 558, 561 (7th Cir. 2012)(quoting *In re Sarah Michaels, Inc.*, 358 B.R. 366, 377 (Bankr.N.D.Ill.2007))(emphasis added); *see* 810 ILCS 5/9-203 (West 2009).

10. Neither Exhibit A nor Exhibit B clearly and accurately describes the collateral (the 2000 Chevy Silverado) that supposedly secures the Visa credit line.

11. The claim should be allowed as an **unsecured** claim only in the amount of $11,050.68. This is because the claimant has not shown and cannot show that any portion of Claim 5 for the Visa credit account is secured by the Debtor's 2000 Chevrolet Silverado.

## Argument
### I. The plain language of the Loan Agreement for the 2000 Chevrolet Silverado makes MidAmerica's claim of cross-collateralization ineffective.

By its own language, paragraph 4 of the Loan Agreement for the truck creates a security interest for other debts only if the TILA disclosure for the other debt clearly discloses the interest. MidAmerica has produced no proof of such a disclosure in the credit card agreement, which predates the truck loan by a decade. Accordingly, the Credit Card Agreement fails to make a Truth in Lending disclosure that the truck secures the credit card, and the cross-collaterization fails.

The Western District Bankruptcy Court has upheld a similar "dragnet clause" but only because it was well-drafted and properly perfected. *In re Phillips*, 161 B.R. 824 (Bankr. W.D. Mo. 1993). The two loan documents in this case are distinguishable, in that together they require specific TILA disclosure of collateral and security being taken in both documents.

MidAmerica has failed to produce the TILA disclosure from the Visa credit agreement showing the status of the 2000 Chevrolet Silverado as potential cross-collateral for future loans; therefore, it has failed to comply with the plain language of Exhibit A and cannot claim a security interest in the Silverado.

## II. Neither Exhibit A nor Exhibit C properly describe the collateral supposedly used to cross-collateralize and secure the Visa credit card.

Even if this court finds that the lack of any contractually-mandated TILA disclosure is not fatal to MidAmerica's claim, the attempted "dragnet clauses" in both Exhibit A and Exhibit C fail to describe the collateral that allegedly secures the Visa line of credit with reasonable particularity.

A description of the collateral must reasonably identify what is described. 810 ILCS 5/9-108(a) (West 2001). "A description of collateral as 'all the debtor's assets' or 'all the debtor's personal property' or using words of similar import does not reasonably identify the collateral." 810 ILCS 5/9-108(c) (West 2001). "A description only by type of collateral defined in the Uniform Commercial Code is an insufficient description of. . .consumer goods."[1] 810 ILCS 5/9-108(e)(2) (West 2001). A description of collateral in a security agreement must be more accurate than even a description in a UCC financing statement. *In re Niles*, 72 B.R. 84, 86 (Bankr. N.D. Ill. 1987). If "one of the creditor's remedies on default is repossession, the description must be specific enough to allow the creditor's agents or the sheriff to distinguish between the goods subject to the security interest and other consumer goods owned by the debtor which may be similar in type but not subject to the security interest." *Aronson Furniture Co. v. Johnson*, 47 Ill. App. 3d 648, 653 (Ill. Ct. App. 1977).

In the present instance, the credit card agreement (Exhibit C) fails to make *any* description of the supposed collateral, let alone a description sufficient to allow an agent to adequately differentiate the "collateral" from Debtors' other possessions. Indeed, Exhibit C (executed nearly ten years earlier) merely states: "collateral securing other loans with us **may** also secure this account." (emphasis added). Exhibit A's language is similarly overbroad: "collateral. . .given as security under this Agreement or for any other loan You may have with Us" is not only not an insufficient description, but fails because Exhibit A secures not only the 2000 Chevy Silverado, but other "personal property securing loans with Us." This statement is merely a "description" of a type of collateral as prohibited by 810 ILCS 5/9-108(e)(2). MidAmerica has failed to produce a description, in any document, sufficient to allow the 2000 Chevrolet Silverado to be security for the Visa credit card.

Therefore, the creditors Claim 5-3 should be allowed only as an **unsecured** claim in the amount of $11,050.68.  The claimant has not shown and cannot show that any portion of Claim 5-3 for the Visa credit account is secured by the Debtor's 2000 Chevrolet Silverado.

Dated: <u>January 25, 2013</u>                                        /s/ Terry L. Lawson, Jr.  #53203
                                                                    LAWSON LAW CENTER LLC
                                                                    700 E. 8th St. #300
                                                                    Kansas City, MO 64106
                                                                    Attorney for Debtors

---

[1] The 2000 Chevrolet Silverado is a "consumer good" because it is used primarily for personal, family, or household purposes. 810 ILCS 5/9-102(a)(23); *See generally Pridegon v. Gates Credit Union*, 638 F.2d 182 (7th Cir. 1982).

## CERTIFICATE OF SERVICE

      I certify that the foregoing document was served on the following parties via ECF where available and sent via U.S. Mail, postage prepaid, on January 25, 2013.

Richard Fink, Trustee
818 Grand Blvd., Ste. 800
Kansas City, MO 64106
Chapter 13 Trustee
Via ECF

1st MidAmerica Credit Union
419 N Shamrock St
East Alton, IL 62024
Creditor

Riezman Berger, P.C.
7700 Bonhomme, 7th Floor
St. Louis, MO 63105
Via facsimile: 314-727-6458
Attorneys for Creditor

Timothy & Barbetta Croft
9309 E 60th Terrace
Raytown, MO 64133
Debtors

Office of the United States Trustee
400 E. 9th St. Rm. 3440
Kansas City, MO 64106


Dated: <u>January 25, 2013</u>                    <u>/s/Terry L. Lawson, Jr.</u>
                                                       Attorney for Debtors


Court address: U.S. Bankruptcy Court, 400 E. 9th St., Room 1510, Kansas City, MO 64106